# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| SUPERKITE PTY LIMITED, ) | |
|     Plaintiff, ) | |
| ) | Case No. 12-cv-7754 |
| v. ) | Judge Sharon Johnson Coleman |
| ) | |
| ROSS GLICKMAN, ) | |
|     Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Superkite PTY Limited ("Superkite") brought this action to collect a $900,000 debt allegedly owed by defendant Ross Glickman ("Glickman"). Glickman filed counterclaims against Superkite and numerous corporations and individuals associated with Superkite alleging that they devised a scheme to defraud him of large amounts of money associated with the parties' attempts to form a joint venture. Counter defendant Superkite and the third-party defendants John Stammers, Ronald Husner a/k/a Ronald Frank Bleyer ("Husner"), Robert Masud, Christopher Dieterick, Andrew Bacik, Hayman Private Equity, LLC ("HPE"), and Hayman Private Equity Australia PTY ("HPE Australia") (collectively "the third-party defendants") move to dismiss Glickman's counterclaims for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6), failure to plead with the requisite particularity pursuant to Fed. R. Civ. P. 9(b), and for lack of personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2). For the following reasons, all claims against third-party defendant Masud are dismissed with prejudice. All claims against third-party defendant Husner are dismissed without prejudice. All remaining motions to dismiss are denied.

**Background**

Superkite is an Australian company involved in private equity capital funding. Third-party defendant Stammers is an attorney and current director of Superkite. Defendant and counter plaintiff Glickman is an Illinois resident and Chief Executive Officer and Chairman of Urban Retail Properties, LLC ("Urban Retail"). Urban Retail is a property management company that oversees the management of regional malls, strip centers, and big box centers across the United States. Third-party defendant HPE is a limited liability company organized under the laws of Delaware with its principal place of business in Massachusetts. HPE consists of five members: Bacik as President, Dieterich as Secretary, Napoli, Becon International, Inc., and Hayman Corporation. HPE Australia is an Australian proprietary limited liability company with its principal place of business

1

in Sydney.  The sole member of HPE Australia is Hayman Corporation, which is a Delaware corporation owned by Hayman Management, LLC.  Husner is the Chairman of the HPE Finance Committee and is purported to be the ultimate decision maker for all HPE and HPE Australia related business.  Masud served as outside counsel to HPE.

On March 21, 2011, Superkite lent Glickman $900,000.00 and the parties entered into a Note Agreement detailing the terms of the loan.  On February 19, 2013, Superkite filed this instant action to collect on the debt allegedly owed by Glickman.  In his answer to Superkite's complaint, Glickman filed several counterclaims alleging that Superkite is nothing more than a sham entity and alter ego of the third-party defendants.  In his counterclaims, Glickman does not deny entering into the loan agreement with Superkite, but argues that the loan was "fictitious" and that the parties never intended that Glickman would actually have to repay the loan.  Glickman details an alleged scheme whereby Superkite and the third-party defendants attempted to use the loan to defraud him during the parties' attempts to form a joint venture.

Specifically, Glickman alleges that in 2009 he was first approached by Napoli, an experienced real estate executive and officer of HPE, concerning the potential of forming a joint venture between Glickman's company, Urban Retail, and the Hayman Group, which included HPE and HPE Australia.  Glickman alleges that Napoli represented to him that Husner would be able to secure hundreds of millions of dollars to invest in retail property.  Glickman claims that Napoli proposed that HPE and HPE Australia work together with Urban Retail to form a successful joint venture utilizing Urban Retail's management expertise and reputation in the United States with HPE's financial backing.

Glickman had previously formed a successful joint venture called UrbanCal with the California State Teachers' Retirement System ("CalSTRS").  Because of his involvement with UrbanCal, Glickman was aware that CalSTRS was interested in selling UrbanCal properties at lower prices than their initial acquisition price.  According to Glickman, the new joint venture with HPE would identify and acquire distressed properties, such as the UrbanCal properties, that could provide substantial returns with added development and professional management.  Indeed, the purchasing of the UrbanCal properties was eventually included in the joint venture agreement between Urban Retail and HPE as a pre-approved transaction.

Glickman maintains that throughout 2009, he engaged in discussions and negotiations with Napoli, Bacik (an HPE member), and Dieterich (an HPE member and officer) concerning the potential joint venture.  On October 28, 2009, Glickman and Bacik executed a letter of intent,

2

summarizing the parties' intent and anticipated responsibilities concerning the joint venture. In November 2009, Glickman, his attorney Joel Cooper, and two Executive Vice-Presidents for Urban Retail traveled to Zurich, Switzerland to meet with Husner, Bacik, Napoli, and HPE's outside counsel, Masud, concerning the joint venture. On January 22, 2010, the joint venture agreement was eventually finalized and executed by Glickman and Bacik. The joint venture agreement was later amended on June 17, 2010, lowering HPE's funding commitment from $500 million to $400 million, among other changes. Glickman alleges that he formed Urban Hayman Management, LLC, to execute and participate in the joint venture per the parties' agreement. Glickman also alleges that throughout the parties' interactions, the third-party defendants repeatedly assured him and represented that HPE was capable and able to meet its financial funding obligations.

Glickman claims that at a joint venture board meeting held in Chicago and attended by Napoli and Bacik, the directors agreed to the continuation of the joint venture business plan. Glickman also contends that the parties agreed to the acquisition of UrbanCal properties as pre-approved transactions provided for in the amended joint venture agreement. The joint venture was required to make a $1.8 million deposit to CalSTRS in order to secure the UrbanCal property acquisition. The deposit was to be paid in two installments of $900,000. Glickman alleges that on February 1, 2011, HPE or an affiliated company, funded $900,000 to the parties' joint venture to be used to pay the first deposit for the UrbanCal property acquisition. Glickman alleges that he had to negotiate several extensions with CalSTRS for the second deposit payment. Glickman contends that because HPE continued to experience delays in securing its funding obligations, the joint venture was unable to pay the second deposit of $900,000 required for the CalSTRS transaction to be completed.

According to Glickman, Superkite is a sham corporation formed by the third-party defendants in an effort to get out of their contractual financial obligations under the joint venture agreement. Glickman claims that Husner called him and made false representations that HPE had more than sufficient funds to honor its contractual obligations to fund the joint venture. Glickman also contends that Husner stated that the funds would not be immediately available due to banking issues. Glickman alleges that Husner advised him that he could make the necessary CalSTRS second deposit by taking out a "fake loan" with a fictitious interest rate from Superkite. Glickman contends that Husner told him that he would never have to repay the $900,000 loan because the joint venture would be fully funded by HPE's $400 million before the "fake loan" matured, and that

Glickman could then use the joint venture funds to repay the $900,000 to Superkite.[1] Glickman claims that the $900,000 loan was actually funds provided by HPE Australia and that Superkite never existed as a separate corporation apart from the third-party defendants. Eventually, HPE never met its funding obligations and the joint venture as well as the CalSTRS transaction failed. Superkite then brought this instant action to collect the $900,000 "loan" from Glickman.

**Legal Standard**

Superkite and the third-party defendants move to dismiss Glickman's counterclaims for various reasons including: failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6); failure to plead with the requisite particularity required pursuant to Fed. R. Civ. P. 9(b); and for lack of personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2).

A motion to dismiss under Rule 12(b)(6) challenges a complaint for failure to state a claim upon which relief may be granted. Fed. R. Civ. P. 12(b)(6); *General Elec. Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1080 (7th Cir. 1997). In ruling on a Rule 12(b)(6) motion, the court accepts as true all well-pleaded facts in the plaintiff's complaint and draws all reasonable inferences from those facts in the plaintiff's favor. *Dixon v. Page*, 291 F.3d 485, 486 (7th Cir. 2002). In order to survive a Rule 12(b)(6) motion, the complaint must provide the defendant with fair notice of the claim's basis, and also state facts which establish that the requested relief is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009).

Under Federal Rule of Civil Procedure 8(a)(2), ordinarily a complaint need only include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Claims alleging fraud, however, must also satisfy the heightened pleading requirement of Federal Rule of Civil Procedure Rule 9(b), which requires that a party "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). Fraud claims "must describe the who, what, when, where, and how of the fraud." *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. Walgreen Co.*, 631 F.3d 436, 441-42 (7th Cir. 2011).

Under Fed. R. Civ. P. 12(b)(2), the plaintiff bears the burden of establishing personal jurisdiction, but need only make a prima facie showing of jurisdictional facts. *Purdue Research Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003). The exercise of personal

---

[1] Reference to the loan at issue as a "fake loan" only reflects Glickman's position that the parties never intended the loan to serve as an actual debt that he would be personally liable for.

4

jurisdiction requires "sufficient contacts or ties with the state of the forum to make [bringing suit] reasonable and just, according to our traditional conception of fair play and substantial justice" such that the defendant is not unduly burdened by the exercise of personal jurisdiction. *See Int'l Shoe Co. v. Washington*, 326 U.S. 310, 320, 66 S. Ct. 154, 90 L. Ed. 95 (1945).

**Discussion**

*1. Superkite Motion to Dismiss [Dkt. 46]*

Initially, for purposes of Superkite's motion, this Court must determine whether Fed. R. Civ. P. 9(b) applies when pleading fraud as the basis for piercing the corporate veil. Superkite argues that Glickman must properly plead the underlying fraud and must therefore meet Rule 9(b) particularity requirements. Glickman contends that even if Fed. R. Civ. P. 9(b) is applicable to his fraud and veil piercing claims, he has met the particularity standards required.

Although it does not appear that the Seventh Circuit has opined on the appropriate pleading standard for veil piercing claims when fraud allegations are at issue, several courts within this district have held that generally Rule 9(b) does not apply to veil piercing allegations. *See Flentye v. Kathrein*, 485 F. Supp. 2d 903, 912 (N.D. Ill. 2007); *see also RehabCare Group East, Inc. v. Sak Mgmt. Servs.*, No. 09 C 4523, 2010 U.S. Dist. LEXIS 85234 (N.D. Ill. Aug. 18, 2010) (J. Lefkow) (noting that the plaintiff need only satisfy the notice pleading standards of Fed R. Civ. P. 8(a) for its veil piercing claims). However, courts within this district have also noted that there is an exception to this general rule where the court is asked to pierce the corporate veil to establish liability for a claim of fraud. *See RehabCare Group East, Inc.*, 2010 U.S. Dist. LEXIS 85234, at *16 n.6 (*citing New Freedom Mortgage Corp. v. C & R Mortgage Corp.*, No. 03 C 3027, 2004 U.S. Dist. LEXIS 537, 2004 WL 783206, at *8 (N.D. Ill. Jan. 15, 2004)). Here, Glickman's allegations are all based upon allegedly fraudulent conduct. Accordingly, Fed. R. Civ. P. 9(b) is the appropriate pleading standard for his fraud claims.

Having determined that Rule 9(b) is applicable to Glickman's fraud counterclaims, the next issue is whether Glickman meets the requirements of Rule 9(b). Rule 9(b) requires a plaintiff to plead fraud claims with particularity, providing the "who, what, when, where and how" of the fraud allegations. *Pirelli*, 631 F.3d at 441-42. Superkite's argument details the differences between Glickman's original counterclaims and his amended counterclaims. Superkite argues that Glickman's removal of the phrase "upon information and belief" from the original complaint does not rectify the problem of Glickman's allegations because he lacks personal knowledge of his claims. However, Superkite's reliance on the slight differences between Glickman's original and

current counterclaims is of little import. An amended pleading supersedes the original, meaning that facts or admissions from an earlier complaint that are not included in a later complaint cannot be considered on a motion to dismiss. *See Scott v. Chuhak & Tecson, P.C.*, 725 F.3d 772, 782-783 (7th Cir. 2013). The real issue is whether Glickman fails to provide any factual basis for his allegation that Superkite was formed in order to defraud him.

Upon review of Glickman's counterclaims, the Court finds that Glickman adequately alleges a scheme by Superkite and the third-party defendants to defraud him. Glickman alleges that Superkite was formed two weeks before he was loaned the $900,000 at issue. Glickman claims that it was never intended that he would be required to personally repay the "loan" because, as Husner explained, HPE would eventually provide the financing promised for the parties' underlying joint venture. Glickman alleges that Superkite did not have any independent funding as a corporation and was a mere instrument of Husner, HPE and HPE Australia. (Compl. at 191, 196). Glickman alleges further that he only interacted with Bacik, Husner, Napoli, and Masud when dealing with Superkite, which he argues indicates that Superkite had no actual employees or operations. Essentially, Glickman alleges that the assurances of Husner and the other third-party defendants regarding the nature of this "fake loan" persuaded him to take the loan in order to help finance the parties' joint venture with the understanding that Glickman would never be personally liable for the repayment of the loan. Thus, Glickman has sufficiently alleged facts in support of his underlying fraud claim.

Next, Superkite argues that although Glickman's allegations name Husner, he fails to allege facts that connect Husner to Superkite in any way. Superkite argues that because Glickman's counterclaims are contingent on piercing Superkite's corporate veil, Glickman's alleged failure to connect Husner to Superkite would undermine any attempt to hold Husner liable under a veil piercing theory. Upon review of the amended counterclaims, the Court finds that Glickman does make specific allegations in several paragraphs as to Husner's relationship to Superkite. Glickman alleges that Husner is the Chairman of the Finance Committee of the Hayman Group which is comprised of HPE and HPE Australia. Glickman specifically alleges that "Husner and the Hayman Parties were working behind the scenes to shift the burden of funding the [joint venture] to Glickman, while keeping the CalSTRS acquisition alive." (Dkt. 43 at ¶ 173). Glickman claims that Husner, Bacik and Stammers schemed to form Superkite as a mechanism for Husner and HPE to fund the [joint venture's] deposit obligation, while simultaneously passing this obligation off to Glickman." (Dkt. 43 at ¶ 174). Glickman alleges further that during a phone call on or about

6

March 16 or 17 Husner told him that he could provide the second $900,000 required to fund the CalSTRS property acquisition for the joint venture by means of a "fake loan" from Husner's entity Superkite. (Dkt. 43 at ¶ 182). Accordingly, Glickman has sufficiently alleged facts supporting Husner's relationship to Superkite and his counterclaims with the requisite specificity pursuant to Fed. R. Civ. P. 9(b).

Lastly, Superkite argues that even if Glickman's allegations were sufficiently pled pursuant to Fed. R. Civ. P. 9(b), they would still fail because his allegations are insufficient to support a veil piercing claim. Glickman need not prove his veil piercing claims at this stage of the case. "At trial the party seeking to have the corporate entity disregarded must come forward with a substantial showing that the corporation is really a dummy or a sham for a dominating personality," however, at this phase of proceedings Glickman need only present sufficient facts alleging that the corporate veil should be pierced. *See Tome Engenharia E Transportes v. Malki*, 1996 U.S. Dist. LEXIS 4585, 13-16 (N.D. Ill. Apr. 9, 1996). Because this Court finds Glickman has alleged sufficient facts to support his claims against Superkite, Superkite's motion to dismiss is denied.

2. *John Stammers Motion to Dismiss [Dkt. 49]*

Third-party defendant Stammers also moves to dismiss Glickman's counterclaims for failure to plead with the particularity required pursuant to Rule 9(b). Stammers argues that Glickman's claims fail because they do not contain any factual allegations as to anything he did or communicated that constituted fraud. Stammers argues that his only role was signing the loan given to Glickman on behalf of Superkite. Upon review of the counterclaims, this Court finds that Glickman adequately alleges that Stammers conspired together with the other third-party defendants to create a sham corporation, Superkite. Glickman alleges that Stammers who served as counsel to Husner and the Hayman Group companies conspired to form Superkite for the sole purpose of providing Glickman with a "fake loan" which he unwittingly used to fund the UrbanCal property acquisition. Accordingly, Stammers' motion to dismiss is denied.

3. *Husner Motion to Dismiss [Dkt. 81]*

Husner moves to dismiss Glickman's counterclaims for improper service pursuant Fed. R. Civ. P. 12(b)(4) and (b)(5). Despite Glickman's various arguments, he offers no arguments or proof that service of process on Roland Bleyer a/k/a Roland Husner was indeed proper and effectuated. Instead, on May 22, 2013, and May 23, 2013, Glickman represented to the Court that he intended to re-serve Husner in accordance with the Hague Convention Treaty to avoid "inefficient and unnecessary motion practice over the meaning of the Hague Convention Treaty" and whether

7

service was proper under Articles 10(b)-(c). (Dkt. 91 and 92). On May 23, 2013, Glickman withdrew his original proof of service at the request of counsel for Husner stating that Husner's motion to dismiss was moot because Glickman agreed to re-serve Husner. On September 30, 2013 Glickman represented to the Court in a status report (Dkt. 117) that service had not yet been effectuated on Husner, but that Glickman intended to file a motion for alternative service of process in the near future. As of March 21, 2014, the date of this Order, no proof of service has been filed with the Court, nor has Glickman filed a motion for alternative service of process. Accordingly, this Court dismisses all claims against third-party defendant Husner without prejudice until Glickman provides evidence that service was properly effectuated.

    4. *Masud, Dieterich, Bacik Motion to Dismiss [Dkt. 94]*

Third-party defendants Masud, Dieterich, and Bacik move collectively to dismiss Glickman's counterclaims for lack of personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2). Masud, Dieterich, and Bacik argue that: 1) personal jurisdiction is barred by the fiduciary shield doctrine; and 2) even if the fiduciary shield doctrine does not apply, they lack sufficient minimum contacts with Illinois to support personal jurisdiction.

    *a. Fiduciary Shield*

Under the fiduciary shield doctrine, a court cannot exercise personal jurisdiction over a defendant "whose presence and activity in the state in which the suit is brought were solely on behalf of his employer or other principal." *See Rice v. Nova Biomedical Corp.*, 38 F.3d 909, 912 (7th Cir. 1994); *see also Kouakou v. Sutton Funding, LLC*, No. 09 C 7132, 2012 U.S. Dist. LEXIS 21889 (N.D. Ill. Feb. 22, 2012). Whether a court decides to apply the fiduciary shield doctrine is a matter of judicial discretion and not one of a defendants' right. *See In re Mahurkar Double Lumen Hemodialysis Catheter Patent Litigation*, 750 F. Supp. 330, 335 (N.D. Ill. 1990). An exception to the fiduciary shield doctrine exists if the plaintiff makes a prima facie showing that the corporate form is a shell or a sham rather than a real, separate entity. *Kouakou*, 2012 U.S. Dist. LEXIS 21889, at *10.

Here, Glickman alleges that: 1) Superkite had inadequate capitalization or commingled funds with the third-party defendants; 2) Superkite failed to maintain arm's length relationships with HPE; and 3) Superkite is a sham corporation for the operations of the third-party defendants. Glickman alleges that Superkite was a mere instrument of the third-party defendants and that the company had no separate employees or operations of its own. Glickman also alleges that the funds transferred by Superkite to Glickman according to the "loan" were merely HPE Australia funds that

were transferred to the shell Superkite corporation. Whether Glickman can substantively prove any of these allegations is a matter for discovery, but in light of the plausible factual allegations, Masud, Bacik, and Dieterich's motion to dismiss Glickman's claims as barred by the fiduciary shield doctrine is denied. Glickman adequately alleges that Superkite was the alter-ego of the third-party defendants such that the alter-ego exception to the fiduciary shield doctrine is applicable in this case.

> b. *Personal Jurisdiction*

The parties do not dispute that this Court has personal jurisdiction over plaintiff Superkite, an Australian company that entered into the loan agreement with Glickman, an Illinois resident. Masud, Dieterich, and Bacik argue that they lack the requisite minimum contacts to be subject to personal jurisdiction here in Illinois. Glickman essentially argues that because the Court possesses personal jurisdiction over Superkite, it also possesses personal jurisdiction over Masud, Dieterich, and Bacik since Superkite is alleged to be a sham corporation and alter ego of these third party defendants. When a party uses veil piercing to establish personal jurisdiction, although the law of the state of incorporation applies to determine whether a party can substantively pierce a corporation's veil, Illinois law governs the analysis of whether personal jurisdiction is proper. *See Nathan v. Morgan Stanley Renewable Dev. Fund, LLC*, No. 11 C 2231, 2012 U.S. Dist. LEXIS 71434, at *22 (N.D. Ill. May 22, 2012)(J. Lefkow). In order for a court to properly exercise personal jurisdiction over a defendant, jurisdiction must comport with the terms of the forum state's personal jurisdiction statute as well as the requirements of the Fourteenth Amendment's Due Process Clause. *Tamburo v. Dworkin*, 601 F.3d 693, 700 (7th Cir. 2010). Illinois' long-arm statute allows for the exercise of jurisdiction over nonresident defendants if it would be allowed under either the Illinois Constitution or the United States Constitution. 735 Ill. Comp. Stat. 5/2-209(c). The Seventh Circuit has held that there is no material difference between the two standards. *Sirazi v. Gen. Mediterranean Holding, SA*, No. 12 C 0653, 2013 U.S. Dist. LEXIS 29636, 10-14 (N.D. Ill. Mar. 5, 2013) (citing *Mobile Anesthesiologists, LLC v. Anesthesia Assocs. of Houston Metroplex, PA*, 623 F.3d 440, 443 (7th Cir. 2010)). Accordingly, in this case, in order for personal jurisdiction to be proper in Illinois, jurisdiction must be proper under the Due Process Clause of the Constitution.

The plaintiff or counter plaintiff bears the burden of establishing personal jurisdiction where, as here, personal jurisdiction is raised on a motion to dismiss. *Felland v. Clifton*, 682 F.3d 665 (7th Cir. 2012). The plaintiff or counter plaintiff need only make a prima facie showing of jurisdictional

facts. *Id*. In order for the court to exercise personal jurisdiction over an out-of-state defendant, "the key issue for constitutional purposes is whether the defendant has sufficient minimum contacts with the forum state such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Id.* at 672-73 (internal citations omitted). A defendant cannot avoid jurisdiction merely because she did not physically enter the forum state; however, each defendant must have purposely established minimum contacts such that he or she should reasonably anticipate being haled into court in the forum state. *Id.* at 673.

Personal jurisdiction can be general or specific, depending on the extent of the defendant's contacts with the forum state. *Tamburo*, 601 F.3d at 701. Here, Glickman does not assert that this court has general jurisdiction over Masud, Dietrich, and Bacik, but instead argues that this Court has specific jurisdiction because of their minimum contacts with Illinois. Specific jurisdiction exists where a controversy is related to a defendant's contacts with the forum state. *Hyatt Int'l Corp. v. Coco*, 302 F.3d 707, 713 (7th Cir. 2002). Even a single act can support specific jurisdiction, so long as it creates a 'substantial connection' with the forum. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 n. 18, 105 S. Ct. 2174, 85 L. Ed. 2d 528 (1985) (quoting *McGee v. Int'l Life Ins. Co.*, 355 U.S. 220, 223, 78 S. Ct. 199, 2 L. Ed. 2d 223 (1957)).

    *i.*  *Masud*

Masud is a Massachusetts resident who serves as outside counsel for HPE, a Delaware company with its principal place of business in Boston. (Dkt. 43 at ¶12, 17). There is no contention that Masud has ever been an officer, director, stakeholder, or beneficial interest holder of any of the third-party defendants named. (Masud's MTD; Dkt. 95 at 11). Glickman argues that this Court has personal jurisdiction over Masud because he allegedly participated in a conspiracy to defraud Glickman by continually making misrepresentations to induce Glickman to create, and partially subsidize, the failed joint venture. (Glickman Resp. to MTD; Dkt. 106 at 3). Specifically Glickman cites to: (1) misrepresentations made at a meeting in Switzerland in which Glickman, Husner, Bacik, Napoli, and Masud were present to discuss forming the joint venture (Dkt. 43 at ¶ 38); (2) letters or emails written by Masud to various individuals (not including Glickman) that were eventually forwarded to Glickman by individuals other than Masud; (3) various emails sent to both Glickman and others on which Masud was copied (*See* Dkt. 43 at ¶ 65, 69, 71, 74, 93, 96, 104, 127, 137, 157); (4) letters by Masud to various HPE representatives (Dkt. 43 at ¶ 65); and (5) emails or letters to Masud from both Glickman and others concerning the joint venture (*See* Dkt. 43 at ¶ 82, 134, 135, 207).

None of the cited contacts are sufficient to establish a substantial connection for purposes of specific jurisdiction. The Court considers three requirements in determining whether conduct was purposefully directed at the forum state: "(1) intentional conduct (or 'intentional and allegedly tortious' conduct); (2) expressly aimed at the forum state; (3) with the defendant's knowledge that the effects would be felt—that is, the plaintiff would be injured—in the forum state." *Felland*, 682 F.3d at 674-75. Being copied or included in a chain of emails between parties, some of whom may be located within Illinois, is insufficient to establish intentional conduct expressly aimed at Illinois. Masud could not be said to have intentionally directed actions or communications to Illinois by an act over which he had no control, such as being copied in an email. Similarly, correspondence between Masud and HPE representatives that were eventually forwarded to Glickman cannot be said to constitute intentional conduct by Masud expressly aimed at this forum. Additionally, the fact that Masud was present during negotiations to form the joint venture in Switzerland does nothing to establish Masud's contacts here in Illinois. At best, Glickman cites to several periphery references and discussions between Masud and HPE representatives concerning the joint venture, in light of his role as outside counsel.

The only direct communication that Glickman alleges between Masud and himself is an email exchange in which Masud explained to him that funding for the joint venture might be delayed because of issues with certain Swiss accounts (Dkt. 43 at ¶ 94). Glickman alleges that Masud confirmed that the Swiss accounts were open and that they were just waiting on authorization from the bank (Dkt. 43 at ¶ 95). This one email is insufficient to meet the minimum contacts requirement. Glickman fails to allege how this email somehow defrauded him or caused him harm or Masud's knowledge of such. There is no allegation that Masud's representations as to the Swiss accounts were false or that his specific representations in this one email caused Glickman's alleged injury. Accordingly, Masud's motion to dismiss for lack of jurisdiction is granted.

        *ii.    Bacik*

Bacik also moves to dismiss Glickman's counterclaims for lack of personal jurisdiction. Bacik is a Florida resident who has served as president of HPE since 2009. HPE is a Delaware corporation with its principal place of business in Boston. Unlike Masud, Bacik's involvement with the attempted formation of the joint venture and his contacts with both Glickman and Illinois are more extensive. First, Bacik served as president of HPE, one of the organizations that Glickman alleges defrauded him throughout their business relationship and attempts to start the joint venture.

11

Glickman seeks to pierce both Superkite and HPE's corporate veil and hold Bacik personally responsible for the alleged fraud. Bacik not only communicated with Glickman concerning the creation of the joint venture, but he also executed a letter of intent summarizing the parties' negotiations, responsibilities, and intent to start the joint venture. Bacik was also present at board meetings in Illinois for the joint venture. The business relationship established between HPE and Glickman is sufficient to justify exercising personal jurisdiction. Accordingly, Bacik's motion to dismiss is denied.

### iii. Dieterich

Dieterich also moves to dismiss Glickman's counterclaims against him. Dieterich is a California resident and an officer of HPE. Like Bacik, Dieterich is alleged to have conspired with the third-party defendants to defraud Glickman while representing that HPE was capable of meeting its financing obligations under the joint venture. Glickman seeks to hold Dieterich personally liable under a veil piercing theory and has sufficiently alleged such a claim. Accordingly, Dieterich's business relationship with Glickman as an HPE officer is sufficient to establish minimum contacts for purposes of personal jurisdiction. Therefore, Dieterich's motion to dismiss is denied.

5. *HPE Australia's Motion to Dismiss [Dkt. 97]*

HPE Australia moves to dismiss Glickman's counterclaims for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6). HPE Australia argues that Glickman's piercing the corporate veil or alter ego claims should be dismissed because: 1) they are not independent causes of action; 2) Glickman fails to plead sufficient facts to allege a piercing the corporate veil claim under Australian law and; 3) Glickman fails to plead with the requisite particularity pursuant to Rule 9(b). The Seventh Circuit has held that piercing the corporate veil under Illinois law is an equitable remedy and that the Seventh Amendment right to a jury trial does not apply to veil-piercing claims. *Int'l Fin. Servs. Corp.*, 356 F.3d at 739. Accordingly, there is no independent legal cause of action for veil piercing; however veil piercing is still an equitable remedy for a specific theory of personal liability. *GoHealth, LLC v. Simpson*, No. 13 C 02334, 2013 U.S. Dist. LEXIS 167416, at *25 (N.D. Ill. Nov. 26, 2013) (J. Chang) (holding that dismissing a veil piercing count "out of hand simply because it is pled as a freestanding count puts form over substance and just invites an unnecessary amendment . . . to the complaint"). This Court therefore construes Counts One and Two as a theory of personal liability for the other legal claims alleged in Glickman's counterclaims. For reasons discussed above the Court applies Illinois law in determining whether personal jurisdiction is proper, s*ee Nathan*, 2012 U.S. Dist. LEXIS 71434, at *22, and finds that Glickman has sufficiently

alleged a claim against HPE Australia. Glickman alleges that the funds used to finance the "fake loan" between him and Superkite were provided by HPE Australia and that it was never intended that Glickman would be responsible for repaying the loan himself. Accordingly, HPE Australia's motion to dismiss is denied.

6. *HPE's Motion to Dismiss [Dkt. 100]*

Finally, HPE moves to dismiss Glickman's counterclaims for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6). HPE asks the Court to take judicial notice of a Certificate of Cancellation filed on HPE's behalf on September 14, 2012. Under Delaware law, the filing of the Certificate of Cancellation precludes Glickman from bringing any claims against HPE. Glickman explains that the Certificate of Cancellation was filed in error and that the Delaware Secretary of State has now nullified the certificate. Upon that explanation without contradiction, HPE's motion to dismiss is denied as moot.

**Conclusion**

Of the numerous motions filed by the various parties in this case, Glickman's counterclaims against Masud are dismissed with prejudice. Glickman's counterclaims against Husner are dismissed without prejudice. Glickman is granted leave to verify proper service of Husner within 28 days of this order. All remaining motions to dismiss are denied. The Court denies Glickman's motions to file surreply briefs (Dkt. 118 and 120). *See Meraz-Camacho v. United States*, 417 Fed. Appx. 558, 559 (7th Cir. 2011) ("The decision to permit the filing of a surreply is purely discretionary and should generally be allowed only for valid reasons, such as when the movant raises new arguments in a reply brief").

IT IS SO ORDERED.

_____
Date: March 21, 2014

Sharon Johnson Coleman
United States District Judge