# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| SUPERKITE PTY LIMITED, | 12-cv-7754 |
| Plaintiff, | |
| v. | Judge Sharon Johnson Coleman |
| ROSS B. GLICKMAN, | |
| Defendant. | |
| -------------------------------------------------- | |
| ROSS B. GLICKMAN, | |
| Third-Party Plaintiff, | |
| v. | |
| SUPERKITE PTY LIMITED, HAYMAN PRIVATE EQUITY, LLC, HAYMAN PRIVATE EQUITY AUSTRALIA (PTY), LTD, ROLAND HUNER a/k/a ROLAND FRANK BLEYER, ANDREW BACIK, JAMES NAPOLI, CHRISTOPHER DIETERICH, ROBERT MASUD, and JOHN STAMMERS, | |
| Counter-Defendant and Third-Party Defendants. | |
| -------------------------------------------------- | |
| HAYMAN PRIVATE EQUITY, LLC, | |
| Third-Party Plaintiff, | |
| v. | |
| ROSS B. GLICKMAN, | |
| Third-Party Defendant. | |

**MEMORANDUM OPINION AND ORDER**

This complex case concerns a business deal gone wrong between Ross Glickman and a group of other business entities and individuals. In 2012, Superkite PTY Limited, an Australian private-equity company, sued Glickman in federal court, alleging that he failed to repay a $900,000 loan. Glickman, a real-estate executive, counterclaimed against Superkite and eight other parties, alleging that they conspired to defraud him by making a sham loan as part of a real-estate deal. Superkite and seven of the other parties moved to dismiss Glickman's counterclaims. The court denied the motion to dismiss by Christopher Dieterich, a lawyer and businessman allegedly affiliated with Superkite. Dieterich now moves [150] the court to reconsider its denial of his motion.

**BACKGROUND**

The court previously outlined the complicated facts of this case in its prior opinion and, thus, need not repeat them here. *See Superkite PTY Ltd. v. Glickman*, No. 12-cv-7754, 2014 WL 1202577, at *1–2 (N.D. Ill. Mar. 21, 2014). Dieterich previously moved the court to dismiss Glickman's counts against him for lack of personal jurisdiction. Dkt. # 94. Glickman presented two primary arguments: that any contacts he had with Illinois were in a purely representative capacity for Hayman Private Equity, LLC and that, aside from this, his actual contacts with Illinois were limited and insufficient to establish jurisdiction. Dkt. # 95 at 10. Dieterich stated in his prior motion that he served merely as outside legal counsel and as an unpaid officer for Hayman. *Id.* at 12.

The court denied Dieterich's motion, writing:

> Dieterich is alleged to have conspired with the third-party defendants to defraud Glickman while representing that [Hayman] was capable of meeting its financing obligations under the joint venture. Glickman seeks to hold Dieterich personally liable under a veil piercing theory and has sufficiently alleged such a claim. Accordingly, Dieterich's business relationship with Glickman as an HPE officer is sufficient to establish minimum contacts for purposes of personal jurisdiction.

*Superkite*, 2014 WL 1202577, at *8.

Dieterich, who has answered Glickman's complaint, moves for reconsideration of his prior motion. Dkt. # 150. Dieterich argues that he is not subject to jurisdiction because any contacts with Illinois occurred while he was acting as a fiduciary for Hayman and that Glickman has not alleged that Hayman was a sham entity. He also argues that his actual contacts with Illinois, independent of the fiduciary-shield doctrine, are insufficient for jurisdiction. *Id.* at 8–10.

**DISCUSSION**

*1. Reconsideration*

Courts may revise interlocutory orders at any time before the entry of final judgment. Fed. R. Civ. P. 54(a). Reconsideration may be proper, in part, when: 1) the court has patently misunderstood a party; 2) the court has made a decision outside the adversarial issues presented by the parties; 3) the court has made an error not of reasoning but of apprehension; or 4) there has been a controlling or significant change in the law or facts. *Bank of Waunakee v. Rochester Cheese Sales, Inc.*, 906 F.2d 1185, 1191 (7th Cir. 1990). "To be within a mile of being granted, a motion for reconsideration has to give the tribunal to which it is addressed a reason for changing its mind." *Ahmed v. Ashcroft*, 388 F.3d 247, 249 (7th Cir. 2004).

*2. Personal Jurisdiction*

"Federal courts ordinarily follow state law in determining the bounds of their jurisdiction over persons." *Walden v. Fiore*, 134 S. Ct. 1115, 1121 (2014). Illinois authorizes its courts to exercise jurisdiction over persons on any basis permitted by the federal Constitution. 735 Ill. Comp. Stat. 5/2-209(c); *accord Tamburo v. Dworkin*, 601 F.3d 693, 700–01 (7th Cir. 2010). In order for a state to bind a nonresident defendant to a judgment of its courts, "the nonresident must have certain minimum contacts such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Walden*, 134 S. Ct. 1121 (internal quotation and alteration marks omitted). A federal court's minimal-contacts analysis must examine the "contacts that the defendant *himself* creates with the forum State" and not "contacts between the plaintiff (or third parties) and the forum State." *Id.* at 1122 (internal quotation marks omitted). Additionally, a court's "analysis looks to the defendant's contacts with the forum State itself, not the defendant's contacts with the persons who reside there." *Id.* The "plaintiff cannot be the only link between the defendant and the forum." *Id.*

This case concerns a contractual relationship between Dieterich and Glickman, an Illinois resident. In *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 478 (1985), the Supreme Court held that a Florida court possessed jurisdiction over an out-of-state franchisee for an alleged breach of a franchise agreement. The Court emphasized that an "individual's contract with an out-of-state party *alone* [cannot] automatically establish sufficient minimum contacts in the other party's home forum." *Id.* (emphasis in original). In *Burger King*, the franchisee did not conduct business in or visit Florida, but the Court nonetheless found that the controversy "grew directly out of a contract with a *substantial* connection" with Florida. *Id.* at 479 (internal quotation

marks omitted). The Court noted that the franchisee "negotiated with a Florida corporation" and formed a long-term "relationship that envisioned continuing and wide-reaching contacts" with the Florida corporation. *Id.*

Here, the mere fact that Dieterich formed a contract with an Illinois resident is insufficient for jurisdiction to exist. *See Walden*, 134 S. Ct. at 1123 (A "defendant's relationship with a plaintiff . . . standing alone, is an insufficient basis for jurisdiction."). Glickman alleges: that Dieterich emailed his lawyer on June 28, 2010, regarding the opening of a Swiss bank account; that Dieterich emailed him directly on August 21, 2010, to provide confirmation of Hayman's bank funds; and that he spoke with Dieterich around November 2010 regarding Hayman's failure to fund the joint venture. Dkt. # 43 at ¶¶ 95, 111, 129. There is considerable question whether these communications, by themselves, provide a sufficient ground for jurisdiction. Glickman argues that he further alleged that Dieterich had "substantial contacts and communications made in furtherance of the scheme to defraud Glickman which were directed to Illinois." Pl. Resp.. Dkt. # 156 at 11. The statements that Glickman relies on, however, are allegations of conduct by the Superkite parties generally. *See* Dkt. # 43 at ¶ 56, 61, 64, 238. For instance, Glickman alleges that "Husner, Bacik, Napoli, Dieterich, and Masud repeatedly represented that [Hayman] . . . possessed hundreds of millions to billions of dollars in bank guarantees." *Id.* at ¶ 61 (emphasis removed). But these statements do not allege conduct specific to Dieterich targeted *at Illinois*.

The parties' amended joint-venture agreement, however, provides a sufficient jurisdictional connection in this case. Dkt. # 43-4, ex. 17. The agreement placed exclusive management responsibility in a Manager, and it identified one of Glickman's companies, Urban Hayman Management, LLC, as the Manager. *Id.* at 29–30. It also identified Glickman

personally as one of two key employees of the Manager. The agreement also provided that Dieterich personally would serve as a director on the joint venture's board. *Id.* at 37. And Glickman alleges that Dieterich, in fact, served as a director of the joint venture and carried out his director responsibilities by approving a corporate resolution. Dkt. # 43 at ¶ 210. Finally, Glickman alleges that the joint venture's principal place of business was Chicago, Illinois. *Id.* at ¶ 7. In short, the allegations establish that Dieterich agreed to serve on the board of an Illinois-based company with management responsibility entrusted almost entirely to Glickman, an Illinois resident. This "substantial and continuing relationship" between Dieterich and an Illinois-based company suffices to meet the Constitution's jurisdictional requirements. *Burger King*, 471 U.S. at 462.

Illinois, however, employs the so-called fiduciary-shield doctrine, under which a person who enters the state solely as a fiduciary for another may not be sued in Illinois. *ISI Int'l, Inc. v. Borden Ladner Gervais LLP*, 256 F.3d 548, 550 (7th Cir. 2001); *Rollins v. Ellwood*, 565 N.E.2d 1302, 1314 (Ill. 1990) (recognizing the doctrine in Illinois); *see Rice v. Nova Biomedical Corp.*, 38 F.3d 909, 912–14 (7th Cir. 1994). "One of the doctrine's conditions is that the person's business in the state be solely as a fiduciary of another person, who is liable as a principal." *Hardin Roller Corp. v. Universal Printing Mach., Inc.*, 236 F.3d 839, 842 (7th Cir. 2001). Here, the joint venture itself is not liable as a principal to Glickman, so it would not be appropriate to shield Dieterich from an individual-capacity suit. In *People ex rel. Hartigan v. Kennedy*, 576 N.E. 107, 114–15 (Ill. App. 1991), the Illinois Appellate Court shielded directors of a Virginia not-for-profit corporation under the doctrine after the organization solicited charitable funds in Illinois under the direction of the group's president. That case is substantially different from the present one, where Dieterich allegedly served as a director of an Illinois-based joint venture.

Additionally, the doctrine is not a legal entitlement but an equitable consideration. *Rice*, 38 F.3d at 914. Application of the doctrine is not proper in this case, where Dieterich allegedly served as a director of Illinois-based joint venture as part of a broad financial scheme.[1]

The court, in its prior order, held that "Dieterich's business relationship with Glickman as a [Hayman] officer is sufficient to establish minimum contacts for purposes of personal jurisdiction." *Superkite*, 2014 WL 1202577, at *8. Dieterich now argues that the court cannot exercise jurisdiction over him because Glickman has not alleged a veil-piercing theory in which Dieterich is responsible for Hayman's acts. The court need not reassess its prior holding and consider Dieterich's fiduciary-shield argument as it relates to Hayman because Dieterich's relationship with Illinois, by serving as a director of the joint venture, provides an independent ground for jurisdiction.

The jurisdictional issues that Dieterich raises in his motion for reconsideration are complex, and his arguments are not frivolous. The court does not read Dieterich's motion as an attempt to have a "second bite at the apple." Nonetheless, because the complaint sufficiently alleges that Dieterich "most certainly knew that he was affiliating himself with an enterprise based primarily in [Illinois,]" the court denies Dieterich's motion. *Burger King*, 471 U.S. at 480.

---

[1] The court finds persuasive the analysis of the district court in *Banwell v. Illinois College of Optometry*, 981 F. Supp. 1137, 1142–43 (N.D. Ill. 1997) (Norgle, J.). There, the court found the fiduciary-shield doctrine inapplicable to a director who voluntarily served on the board of an Illinois corporation and participated in its management. The director's "contacts with Illinois were voluntarily-assumed, significant, and continuous." *Id.* at 1143. Here, the joint venture was not an Illinois entity, but Glickman alleges both that its principal place of business was Illinois and that Dieterich carried out has director responsibilities. Dkt. # 43 at ¶¶ 6, 210.

**CONCLUSION**

For these reasons, the court denies Dieterich's motion [150] for reconsideration.

_____
SHARON JOHNSON COLEMAN
United States District Judge

DATED:  November 12, 2014